# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**JIMMY VILLALOBOS-SANTANA,** *et al.,*

    **Plaintiffs,**

    **v.**

**PUERTO RICO POLICE BUREAU,** *et al.,*

    **Defendants.**

**Civil No. 21-1312 (ADC)**

## <u>OPINION AND ORDER</u>

Before the Court is the Commonwealth of Puerto Rico ("Commonwealth") and the Puerto Rico Police Bureau's ("PRPB," and together with the Commonwealth, "defendants") motion for summary judgment and statement of uncontested material facts ("SUMF" or "statement of facts"). **ECF Nos. 46, 47**. Also pending before the Court is plaintiffs Jimmy Villalobos-Santana ("Villalobos-Santana") and Jimmy Colón-Rodríguez's ("Colón-Rodríguez" and together with Villalobos-Santana, "plaintiffs") motion to strike at **ECF No. 78**.

For the reasons discussed herein, the motion for summary judgment at **ECF No. 47 is GRANTED IN PART AND DENIED IN PART**; the motion to strike at **ECF No. 78** is **DENIED.**

## I.    Procedural Background[1]

Plaintiffs claim that in 2018, Villalobos-Santana filed an internal complaint at the PRPB against his supervisors at the Arecibo Highway precinct, including Lieutenant Raúl González-Bermudez ("González-Bermudez"), "due to a pattern of hostile conduct." **ECF No. 7** at 2.[2] The PRPB transferred González-Bermudez to a different precinct, but Villalobos-Santana's new supervisor, Lieutenant Ramón Martínez-Cruz ("Martínez-Cruz"), allegedly granted González-Bermudez access to the Arecibo precinct regularly. *Id*. Thus, Villalobos-Santana alleges he filed another internal complaint, this time against Martínez-Cruz. *Id*., at 3.

A couple of months later, Villalobos-Santana and González-Bermudez saw each other at a commercial establishment in Arecibo. *Id*. González-Bermudez allegedly made menacing gestures at Villalobos-Santana. *Id*. According to the allegations, Villalobos-Santana complained about the incident and the PRPB requested both González-Bermudez and Villalobos-Santana to hand in their PRPB issued firearms. *Id*. In October 2019, the PRPB filed charges against Villalobos-Santana requesting his suspension without pay for 120 days. Moreover, on March 3, 2020, the PRPB temporarily transferred Villalobos-Santana to a PRPB precinct in Barceloneta.

---

[1] The allegations included herein are not uncontested. They are only included to provide a procedural background and context given the fact that both the parties' statements of proposed uncontested facts lack chronological order.

[2] The amended complaint lacks a clear timeline of the relevant events and fails to provide a clear account of the many internal complaints that both plaintiffs and defendants have filed against each other. Thus, reading the complaint in the most favorable light to non-movants, the Court will only provide a short and general background to support the discussion relevant here.

The charges against Villalobos-Santana were dismissed in February 2021. *Id.*, at 4. Accordingly, he was transferred back to Arecibo a month later. *Id.*

Co-plaintiff Colón-Rodríguez was called as a witness in Villalobos-Santana's proceedings. *Id.*, at 4. Plaintiffs allege that defendants retaliated against Colón-Rodríguez thereafter. *Id.* Among other adverse actions, Lieutenant Pedro Ramos-Rosario ("Ramos-Rosario") altered Colón-Rodríguez's work schedule. *Id.* His new shifts were more "dangerous." *Id.* In light these and other adverse actions, Colón-Rodríguez filed an administrative complaint for retaliation. *Id.*

Meanwhile, Colón-Rodríguez was reaching retirement age, so requested leave to exhaust his unused sick and vacation days and applied for several trainings he needed to take before retirement. *Id.*, at 4. However, he did not receive any response to his requests from his supervisors. *Id.* Therefore, Colón-Rodríguez had to register for the ethics and weapons training on his own. *Id.*, at 5.[3] Plaintiffs also alleged that Colón-Rodríguez worked a weekend on December 2018, which he was not supposed to work ("pursuant to [PRPB's] regulations") and for which he was not compensated. *Id.*, at 5.

According to the complaint, high ranking officials of the PRPB eventually ordered Cólon-Rodríguez to exhaust his unused sick and vacation days. While on leave, he received a call from his Arecibo Highway offices requesting Colón-Rodríguez's tow truck services, a side job he had.

---

[3] Ramos-Rosario filed an administrative complaint against Colón-Rodríguez for taking a weapon training at the shooting range without his authorization. **ECF No. 7** at 6.

Plaintiffs allege that Ramos-Rosario filed a complaint against Colón-Rodríguez claiming that he used his days on leave to work in the private sector. *Id.*

Based on these facts and others that are not clearly discernible from the amended complaint, each plaintiff filed a charge at the Equal Employment Opportunity Commission ("EEOC") for discrimination and/or retaliation on March 1, 2019.[4] On May 16, 2019, again, each plaintiff filed a second charge with the EEOC. The EEOC denied plaintiffs' first charges but granted each plaintiff a right to sue letter on their second charges.

Thereafter, on July 4, 2021, plaintiffs filed the instant action against their employer, the PRPB, and the Commonwealth seeking relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000,[5] Puerto Rico Law 100, P.R. Laws Ann. Tit. 29, §146 ("Law 100"), and Puerto Rico Law 115, P.R. Laws Ann. Tit. 29, §194 ("Law 115"), as well as attorney's fees, The complaint was later amended by plaintiffs to eliminate the Puerto Rico law claims and to drop Colonel Antonio López-Figueroa as a named co-defendant. **ECF No. 7**.

Once plaintiffs filed the amended complaint and after several proceedings not relevant here, the parties commenced discovery. However, both parties moved for extensions of time to conclude discovery and to file dispositive motions. On May 17, 2023, defendants logged their

---

[4] The amended complaint mentions other internal complaints. However, the lack of details about these internal proceedings makes it impossible for the Court to track them herein.

[5] Plaintiffs asserted their Title VII retaliation claims are "specifically" under "§ 2000e-3(a)." **ECF No. 1** at 6; **7** at 6-7.

motion for summary. **ECF Nos. 46, 47**. Plaintiffs moved to strike defendants' motion for summary judgment, but the Court denied their request. **ECF Nos. 48, 52**. Plaintiffs then requested a couple of extensions of time to file an opposition to defendants' summary judgment papers. **ECF Nos. 54**, **65**. Plaintiffs finally logged their opposition to summary judgment on September 20, 2023, which incorporates their "counter statement" of facts (herein "opposing statement").[6]

Most relevant here and salient among plaintiffs' opposition, is plaintiffs' challenge to defendants' SUMFs numbers 23 and 30. *See* **ECF No. 66-1** at 9, 25. There, plaintiffs raised an objection against the admissibility of defendants' Exhibit J for Fed. R. Civ. P. 56 purposes.[7] Namely, they argue that Exhibit J (a work plan providing for public awareness and community training) is inadmissible since it had not been disclosed or discovered by defendants before and because it had not been authenticated. **ECF No. 66-1** at 9, 25.

On November 14, 2023, defendants filed a reply to plaintiffs' motion in opposition to summary judgment. **ECF Nos. 76.** Among other things, defendants included a declaration under penalty of perjury signed by Ramos-Rosario, the person who drafted Exhibit J and oversaw the implementation of the rules set forth therein. **ECF Nos. 76, 76-1**. Six months later, on November

---

[6] Local Civil Rule 56(c) allows a summary judgment respondent to file an opposing statement that includes "additional facts" in a "separate section… set forth in separate numbered paragraphs and supported by a record citation[.]" Plaintiffs did not include "additional facts" as per Local Civil Rule 56(c).

[7] Technically, the rule does not require the material submitted in support of motion for summary judgment to be "admissible" *per se*. Instead, what Fed. R. Civ. P. 56(C)(2) and (4) require is that the "material… be presented in a form that *would* be admissible in evidence" or that the "affidavit or declaration… set out facts that *would* be admissible in evidence, and show that the affiant… *is competent to testify on the matters* stated." (Emphasis added).

16, 2023, plaintiffs moved to strike it under the same grounds raised two months earlier in their opposition to summary judgment. **ECF No. 78**. However, plaintiffs did not move for leave to file a sur-reply to defendants' summary judgment reply brief. Defendants filed a response to the motion to strike and plaintiffs replied. **ECF Nos. 81**, **83**.

## II. Legal standard

Through summary judgment, courts "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992). A court may grant summary judgment only when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Sands v. Ridefilm Corp.*, 212 F.3d 657, 660 (1st Cir. 2000). A factual dispute is "genuine" if it could be resolved in favor of either party, and it is "material" if it potentially affects the outcome of the case. *See Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004); *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 83 (1st Cir. 2016) (citations omitted); Fed. R. Civ. P. 56(a). Although the court states the facts in the light most favorable to the party against whom summary judgment is entered, the court is still required "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Grp., Inc. v. Ferré Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001) (citation omitted).

The court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." *Reeves v. Anderson Plumbing Productions Inc.*, 530 U.S.

133, 135 (2000). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of a jury, not of a judge. *See id.*

In order to defeat a properly supported motion for summary judgment, the non-moving party must set forth facts showing that there is a genuine dispute for trial. *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011). L. Civ. R. 56(c) states, in pertinent part, "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts." *Id.* Moreover, Local Rule 56(e) provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. . . The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced by the parties' separate statement of facts." L. Civ. R. 56(e). The nonmoving party is required to demonstrate "through submissions of evidentiary quality that a trial worthy issue persists." *Iverson v. City of Boston*, 452 F.3d 94, 108 (1st Cir. 2006).

"When a non-moving party fails to file a timely opposition to an adversary's motion for summary judgment, the court may consider the summary judgment motion unopposed, and take as uncontested all evidence presented with that motion." *Pérez-Cordero v. Wal-Mart Puerto Rico*, 440 F.3d 531, 533-34 (1st Cir. 2006) (citing *NEPSK, Inc. v. Houlton*, 283 F.3d 1, 7-8 (1st Cir. 2002)). Nonetheless, the Court must still scrutinize the summary judgment motion under the terms of the Federal Rules of Civil Procedure but, "[i]n most cases, a party's failure to oppose summary judgment is fatal to its case." *Id.* at 534.

### III.    Discussion[8]

#### A.    Defendants' Exhibit J

Exhibit J is a "Work Plan of the High-Visibility Enforcement (HVE) Public Awareness and Community Training (PACT) Program[,]" (the "plan") **ECF No. 46** at n.30. Under the plan, from December 14 to December 30, 2018, the Arecibo Highway Division conducted a "campaign against intoxicated automobile… to prevent fatal accidents and the loss of life." *Id*., at 6. The document detailing the above-described plan (*i.e*. Exhibit J) was not revealed or disclosed to plaintiffs before defendants filed their motion for summary judgment. Thus, plaintiffs request it be excluded from consideration at this or at a further stage of the case.

Under Fed. R. Civ. P. 26(a)(1)(A)(ii) and (a)(3)(A) parties must disclose all documents that they may use to support its claims or defenses, and all evidence that they may present at trial, unless their purpose is "solely for impeachment." The parties must also "supplement or correct its disclosure or response [to an interrogatory, request for production, or request for admission] … in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A).

---

[8] Because the facts of this case are not voluminous, the Court will consolidate the factual findings with the discussion. Aside from those specifically identified herein, the Court draws the facts from the well-pleaded facts of the complaint and the statements of proposed facts submitted by the parties that comply with Local Rule 56. *See CMI Capital Market Inv. v. González-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). Although the Court reviewed every statement submitted by the parties, it will only consider and include in this Opinion & Order those facts that are material for purposes of summary judgment as mandated by Fed. R. Civ. P. 56.

On the other hand, Fed. R. Civ. P. 37(c)(1) provides a remedy for incomplete or late disclosures. Specifically, under Rule 37 a court may preclude a party from using "that information... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id*. However, it is well known in this Circuit that "in the absence of harm to a party, a district court may not invoke the severe exclusionary penalty provided for by Rule 37(c)(1)." *Cruz-Vázquez v. Mennonite Gen. Hosp., Inc.*, 613 F.3d 54, n.1 (1st Cir. 2010). Furthermore, even when there is harm to a party, "[p]reclusion is not strictly required." *Lawes v. CSA Architects & Eng'rs LLP*, 963 F.3d 72, 91 (1st Cir. 2020). Instead of automatically excluding the late disclosures, the Court evaluates *inter alia* the "history of the litigation; the proponent's need for the precluded evidence; the justification (or lack of one) for the late disclosure; the opponent-party's ability to overcome the adverse effects of the late disclosure (surprise and prejudice); and the late disclosure's impact on the district court's docket." *Zampierollo-Rheinfeldt v. Ingersoll-Rand de Puerto Rico, Inc.*, 999 F.3d 37, 47 (1st Cir. 2021).

In this case, the late disclosure does not warrant exclusion.[9] This case has not been scheduled for trial or pre-trial. Moreover, plaintiffs had more than four months to ask the Court for relief (exclusion or additional discovery) against Exhibit J before filing their response to the motion for summary judgment. Exhibit J lingered in the docket of this case for six months before

---

[9] The ruling in this case is fact-specific and in no way reflects this Court's opinion on the appropriate relief in a different scenario nor reflects on the Court's authority to limit its use in the future or any other appropriate sanction.

plaintiffs moved to strike the content of the exhibit as well as the declaration under penalty of perjury authenticating it. **ECF No. 78**.

Moreover, defendants explained that they came to know of the document's existence while preparing their motion for summary judgment. **ECF No. 81** at 4. They also claim that the late disclosure of the document gives them no edge over plaintiffs since plaintiffs should have known of the plan contained therein, which was the reason (or at least one of them) why Colón-Rodríguez was assigned to work on weekends. Furthermore, it is not evidence particularly favorable to plaintiffs or that they could have otherwise used in their favor if it would have been disclosed earlier. Thus, plaintiffs were not prejudiced or precluded from presenting their case due to the information holdup.

Accordingly, although not ideal, the late disclosure in this case is harmless given the nature of the information and the stage of the proceedings. Moreover, plaintiffs had more than four months to either prepare, deny, or otherwise counter the information, or move for another relief against the late disclosure. Accordingly, the motion to strike at **ECF No. 78** is **DENIED**.

### B.     Defendants' first argument: the untimeliness of plaintiffs' claims

Defendants' first ground for dismissal rests on the contention that some of plaintiffs' claims are time-barred under Title VII. **ECF No. 47** at 10-16. In support of this argument, defendants presented a series of statements of facts that were admitted by plaintiffs. *See* **ECF No. 66-1** at 1-2.

###### (i)    The undisputed facts regarding the EEOC proceedings and filings[10]

###### (a)    Villalobos-Santana's EEOC charges

On March 1, 2019, Villalobos-Santana filed a charge at the EEOC, No. 515-2019-00200

("Villalobos-Santana's first charge"), alleging that beginning on or around September 1, 2017,

and up to March 1, 2019, several supervisors retaliated and discriminated against him. **ECF No.

46** at 1; **66-1** at 1.

He claimed that his supervisors "Ramón Martínez and Raúl González," retaliated by

creating a "hostile environment" because they "contradicted the orders that he gave to his

subordinates." *Id*. He also claimed that he was "ridicule[d] by his coworkers for comments made

by his supervisors[.]" **ECF No. 46** at 2; **66-1** at 1. Moreover, he claimed that he was disarmed

without reason and assigned early morning shifts. *Id*. According to his EEOC claims, the internal

administrative investigation into this conduct yielded no results because the people in charge of

the investigation "had close nexus of friendship" with the targets of the investigation. *Id*.

On May 13, 2019, Villalobos-Santana filed a second charge of discrimination, No. 515-

2019-00319 ("Villalobos-Santana's second charge"), at the EEOC alleging discrimination

"because of retaliation." *Id*.  In his second charge, he alleged retaliation "because: (1) he did not

receive the medical leave that he requested; (2) his shifts have been change[d] constantly; (3) he

had his access remove[d] to the copy machine and evidence box." *Id*.

---

[10] Defendants presented a SUMF with a limited and unorganized version of the factual underpinnings of this case. *See* **ECF No. 46** at 1-9. Because the Court cannot assume the allegations in the amended complaint are true under Fed. R. Civ. P. 56, its ability to provide a more coherent factual background is very limited.

On May 16, 2019, the EEOC notified Villalobos-Santana that his first charge was being "closed" because the EEOC was unable to conclude that a violation of the relevant statutes occurred. *Id*. On even date, the EEOC informed that he had to file his lawsuit, if any, within 90 days. *Id*.

Although Villalobos-Santana was transferred to Barceloneta on March 3, 2020, he continued to supervise other agents, investigate complaints, and continued with his patrolling duties albeit in a different police jurisdiction. **ECF No. 66-1** at 3. Villalobos-Santana's supervisors at Barceloneta "treated [him] well" and even requested "him to come back" to Barceloneta after he returned to his original precinct in Arecibo. *Id*.

On April 6, 2021, Villalobos-Santana was notified by the EEOC "of the conciliation failure" and was "given a notice of right to sue" based on the events included in his second charge. **ECF No. 46** at 3; **66-1** at 1.

**(b)    Colón-Rodríguez's EEOC charges**

On March 1, 2019, co-plaintiff Colón-Rodríguez filed a charge at the EEOC, No. 515-2019-00201 ("Colón-Rodríguez's first charge"). He claimed that the PRPB discriminated against him beginning on or around September 1, 2018, and up to March 1, 2019, due to his age and in "retaliation" for engaging in protected conduct. *Id*. Specifically, Colón-Rodríguez charged his employer with discrimination because he testified in Villalobos-Santana's internal administrative investigation and for working a side-job without leave. *Id*. Moreover, he claimed that the following adverse actions ensued: "his shift was change from 12:00pm to 8:00pm to a

one from 8:00pm to 4:00am[,]" "he did not receive[d] response from his supervisors [] on how to exhaust his sick and vacation days before his retirement[,]" was "force[d] to work on the weekend[,]" and was subjected to an investigation regarding his failure to secure leave before working in his second job. *Id*.

On May 16, 2019, the EEOC notified that the charge "was being closed because they were unable to conclude that the information obtained established violation of the statutes" and that he had 90 days to file a lawsuit. *Id*.

On May 15, 2019, Colón-Rodríguez filed a second charge of "retaliation" that took place between on or around March 1, 2019, and May 9, 2019, No. 515-2019-00303 ("Colón-Rodríguez's second charge"). **ECF No. 46** at 4; **66-1** at 1-2. He claimed that his supervisor, Ramos-Rosario, did not allow him to complete certain trainings that he needed in order qualify for retirement and that he did not receive a "response regarding his request to obtain training from the Governmental Ethics Office." *Id*. Colón-Rodríguez further charged that the PRPB launched an "administrative investigation file against him regarding an incident that occurred in the shooting range." *Id*. On April 6, 2021, the EEOC notified Colón-Rodríguez of his "right to sue based on the events alleged at" the second charge. *Id*.

### (ii)    Statute of limitations[11]

In their first argument for summary judgment, defendants contend that plaintiffs' several claims which are related to the conduct included in each their first EEOC charges are time-barred "due to their failure to comply with administrative filing requirement[s] and exhaustion of remedies under Title VII." **ECF No. 47** at 2. Defendants argue that "plaintiffs' second EEOC charge does not substantially relate to the first [EEOC charge]" and, thus, their claims in the first EEOC charge are time-barred. *Id.*

### (iii)    The parties' legal arguments as to Title VII's time bar and the applicable law pursuant to *Morgan*

Based on these undisputed facts, defendants contend that Villalobos-Santana's claims in the instant action based on his first EEOC charge are time-barred. They argue that the claims in the complaint related to Villalobos-Santana's first charge were filed 700 days late.[12] The same goes for co-plaintiff Colón-Rodríguez. Defendants argue that Colón-Rodríguez's retaliation claim related to the PRPB investigation initiated because of his off-duty tow truck "side-line" work must also be dismissed as time-barred. They posit that it is time-barred because it was

---

[11] The following facts can be distilled from the parties' Fed. R. Civ. P. 56 and Local Civil Rule 56 submissions. Since plaintiffs failed to submit a statement of additional facts under Local Civil Rule 56(c) or otherwise move for cross-summary judgment, the Court is precluded from considering facts outside the statements included with the parties' summary judgment papers.

[12] "Villalobos[-Santana] had to file a [c]omplaint in state or federal court on or before August 14, 2019, for the alleged events that he describes in his discrimination [c]harge at the EEOC No. 515-2019-00200. Here, Plaintiff Villalobos filed his original [c]omplaint on July 4, 2021 - that is - seven hundred (700) days after the 90 days deadline provided by the EEOC." **ECF No. 47** at 11. Plaintiffs do not oppose these calculations.

only included in Colón-Rodríguez's first charge, and that after it was closed, Colón-Rodríguez

had until August 14, 2019 to file suit. **ECF No. 47** at 16.

Defendants further argue that both plaintiffs' second EEOC charges do not "extend[]"

the statutory time frame related to the conduct incorporated in the first charge. Specifically, they

argue that the "continu[ing] violation doctrine" does not apply. **ECF No. 47** at 11. This is so

because "for the continuing violation doctrine to apply, the allegedly discriminatory or hostile

conduct that predates the Title VII filing period must substantially relate to later allegations of

abuse such that all of the allegations can fairly be said to constitute the same actionable practice."

*Id*. Citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), defendants sustain that the

substantial differences between plaintiffs' first and second EEOC charges preclude the

application of the continuing violation doctrine in this case. Although defendants concede that

"no simple test exists," they argue that the fact that the adverse actions were carried out by

different managers, among other factors, heavily favor their position. *See id*., at 12-13 (quoting

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. at 120).

In their opposition, plaintiffs find defendants' theory "inexplicabl[e]." **ECF No. 66** at 3.

Plaintiffs contend that the "Supreme Court in *Morgan* did not state that charges had to be

'substantially similar' for the claim not to be time barred." *Id*., a 4. Instead, plaintiffs argue that

"other supervisors or other acts that were not the same as before may create a hostile

environment." *Id*., at 5. Thus, plaintiffs conclude, "we have several acts of discrimination which,

albeit were not the same, nevertheless created a hostile work environment." *Id*. Plaintiffs did not cite any authority other than *Morgan*. *Id*.

Via reply, defendants raised counter arguments based on two First Circuit cases. However, the first case predates *Morgan* and the second one does not discuss (or even cite) *Morgan*. **ECF No. 76** at 4. To wit, relying on to *O'Rourke v. City of Providence*, 235 F.3d 713 (1st Cir. 2001), defendants posit that plaintiffs need to show that the "anchoring act is substantially related to an untimely act… if the subject matter of the anchoring act is sufficiently similar." **ECF No. 76** at 4 citing *id.,* at 731. On the other hand, defendants cite *Noviello v. City of Boston*, 398 F.3d 76, 87 (1st Cir. 2005) to conclude that "acts that consisted of a series of discrete acts orchestrated by cohort of different individuals and occurring over a period of many months had to be viewed as two separate and independent harms." **ECF No. 76** at 4.

Although not properly spelled out, the Court could infer that plaintiffs' position is that the *Morgan* Court rejected the "continuing violation" test for either discrete or hostile environment claims and, thus, they need not show that the unlawful conduct included in the second EEOC charge is similar to conduct in the first charge to survive Title VII time bar defense. However, the Court is barred from entertaining such theory for two reasons. First, this interpretation of *Morgan* was not properly briefed, which suffices to deny it on its face. *See* Local Civil Rule 7; *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). Second, as discussed in more detail in the next paragraphs, First Circuit precedent recognizes that a hostile work environment claimant can raise the "continuing violation doctrine" in order to file suit for otherwise time-

barred claims. Therefore, even though the Court can see some tension between *Morgan* and some

First Circuit decisions that apply the continuing violation doctrine in general terms, the Court

need not traverse that tangential lane here.[13]

      Contrary to the parties' superficial arguments, there is a clear distinction in Title VII's

statute of limitations for discrete adverse employment actions and hostile work environment

claims. Under First Circuit caselaw, hostile work environment claims are the "classic example

of a continuing violation because the actionable wrong consists of an accumulation of individual

acts that, taken together, create the environment." *Maldonado-Cátala v. Municipality of Naranjito*,

876 F.3d 1, 9 (1st Cir. 2017)(quoting *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir.

2009)(cleaned up)). "[A]ll of the 'component acts' alleged in a hostile work environment claim

may be considered in determining liability even if they occurred outside the limitations period."

*Maldonado-Cátala*, 876 F.3d at 9. In other words, under the continuing violation doctrine, which

applies to hostile work environment claims in the First Circuit (not to discrete acts), "a plaintiff

---

[13] The *Morgan* Court explicitly rejected the Ninth Circuit's application of the "continuing violation doctrine" to discrete acts. *See, inter alia, Morgan*, at 110-11 ("In Morgan's view, the term 'practice' therefore provides a statutory basis for the Ninth Circuit's continuing violation doctrine. This argument is unavailing[.]"); *id.*, at 114 ("The Court of Appeals applied the continuing violations doctrine to what it termed 'serial violations,' holding that so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability… With respect to this holding, therefore, we reverse."). But the *Morgan* Court did not mention any such doctrine in its discussion of hostile work environment claims. The Court explained that these "hostile environment" claims clear Title VII's time bar as long as one of its components is timely" because the hostile work environment "encompasses a *single* unlawful employment practice," not because of a continuing violation." *Morgan*, at 117 (emphasis added).

may obtain recovery for discriminatory acts that otherwise would be time-barred so long as a related act fell within the limitations period." *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d at 130.

Thus, the question before the Court is whether the alleged discriminatory conduct included in each of plaintiffs' first EEOC charges is part of a hostile work environment or discrete actions by the employer.[14] If they are discrete actions, the parties seem to agree that, the claims thereunder would not be actionable here. *See* **ECF No. 66** at 5;[15] *see also Morgan*, at 113 ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock[.]"); *Tobin*, 553 F.3d at 130; *Ayala v. Shinseki*, 780 F.3d 52, 57 (1st Cir. 2015).

Generally, discrete acts are "unlawful employment practices" that occur on a particular "day" and that are "separately actionable" even if "related[,]" *Morgan*, at 113, since they "do[] not require repeated conduct to establish an actionable claim." *Tobin*, at 130. Examples of discrete acts are "termination, failure to promote, denial of transfer, or refusal to hire." *Morgan*, at 114. Other examples of discrete acts include a "denial of a disabled employee's request for accommodation[,]" *Tobin*, at 130, "a change of supervisor, and the failure to assign work[,]" *González-López v. State Industrial Products Corp.*, 2019 WL 8370884, at *8 (D.P.R., 2019), "failure to renew a contract, a change of supervisor, a relocation to another floor, a transfer to another

---

[14] Plaintiffs offer no alternate ground to hold that the employer's actions included in the first charge are timely.

[15] Again, plaintiffs "accepted" the timeline included in defendants' SUMFs 1-18, *see* **ECF No. 66-1** at 1-2, which contain all the relevant facts related to the dates of the filings of the EEOC charges. Moreover, plaintiffs did not offer a different timeline or other argument to support a different outcome. *See* **ECF No. 66**.

office, and the failure to assign work to an employee[,]" *Ayala v. Shinseki*, 780 F.3d at 57

(collecting cases), "moving plaintiff to a smaller office and transferring her from one supervisor

to another[,]" *id.* (citing *Rivera v. P.R. Aqueduct & Sewers Auth.*, 331 F.3d 183, 186–89 (1st Cir.

2003), *see Miller v. N.H. Dep't of Corr.*, 296 F.3d 18, 21–22 (1st Cir. 2002)(a negative performance

evaluation, transfer to another area, and letter of warning).

### (iv)     Co-plaintiff Villalobos-Santana's claims

Defendants argue that co-plaintiff Villalobos-Santana's claims in his first EEOC charge

are time-barred and unactionable in this case. **ECF No. 47** at 10. According to defendants,

Villalobos-Santana's first EEOC charge included claims of retaliation due to a "(1) a hostile

environment… created… by his supervisors, Lt. Ramón Martínez and Lt. Raúl González, in that

they contradicted the orders that he gave to his subordinates; (2) he was ridiculed by his

coworkers for comments made by his supervisors; (3) he was disarmed without reason; and (4)

his shift was change[d] to the early morning." *Id.*, at 10.

Plaintiffs do not challenge defendants' time calculations or their argument that, absent a

"continuing violation" in hostile work environment claims, plaintiffs' claims in their first EEOC

charges are time-barred. Plaintiffs only argue that the claims in the first and second charges need

not be significantly similar in order for the timely ones to extend over the ones that would

otherwise be untimely. **ECF No. 66** at 3-5.

There is no doubt (and plaintiffs do not argue otherwise) that the disarmament and the

change of shifts are discrete adverse acts. Assuming they were in violation of Title VII, they

occurred in a specific day, they do not require further action to adversely affect the employee, and were independently actionable. *Morgan*, at 110 ("A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'"). Accordingly, because they were filed only in the first EEOC charge, they are time-barred for Title VII liability purposes because they are discrete acts.[16] *See Ayala v. Shinseki*, 780 F.3d at 56 ("discrete discriminatory acts will be time-barred, and thus not actionable, even if they are related to acts alleged in timely filed charges.") The fact that the "effect of the employer's actions continues to be felt by the employee for as long as he remains employed" or were followed by other unlawful acts plays no role in the timely filing test. *Id.*, at 57. Finally, even if the Villalobos-Santana's second EEOC charge included allegations that the employer failed to correct these adverse acts (argument that is not properly developed by the parties), they are nonetheless time-barred. Indeed, "an employee may not extend or circumvent the limitations period by requesting modification or reversal of an employer's prior action." *Id.*, at 58. Therefore, these acts are unactionable.

The same cannot be said of Villalobos-Santana's other two claims in his first EEOC charge, namely the "hostile work environment" he was exposed to by his supervisors'

---

[16] Again, plaintiffs' sole argument is that *Morgan* does not require the different adverse actions to be "similarly related." *See* **ECF No. 66** at 3-6. They do not, discuss the difference between discrete acts and a hostile work environment or provide an alternative argument as to defendants' proposed timelines. *Id*. Although plaintiffs are nonmovants, the Court cannot draw inferences contrary to the law. *See López-Hernández v. Terumo Puerto Rico LLC*, 64 F.4th 22, 28 (1st Cir. 2023)("Although we draw all reasonable inferences in the nonmovant's favor, we will not draw *unreasonable* inferences or credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective.")(emphasis in the original)(quoting *Cabán-Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1 (2007).

comments and actions. **ECF No. 47** at 10. More specifically, supervisors "Ramón Martínez and Raúl González" created a hostile environment because they "contradicted the orders that he gave to his subordinates." **ECF No. 46** at 2; **66-1** at 1. He also claimed that he was "ridicule[d] by his coworkers for comments made by his supervisors[.]" *Id*.

These actions "are different in kind from discrete acts. Their very nature involves repeated conduct." *Morgan*, at 115. Contrary to the untimely discrete acts dismissed for the liability assessment above, a single act of this alleged harassment by his superiors (*i.e.* "comments," "contradicting his orders," "ridicule") may not be actionable on its own, but rather based on the cumulative effect of each individual act. *Id*, at 116. Therefore, for the time of filing inquiry, the above-described actions are more akin to hostile work environment.

"A hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice." *Id*, at 117. As to the calculation of the timely filing timeline, the Supreme Court explained: "[i]t does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period." *Id*. In this regard, the Court notes that Villalobos-Santana's second EEOC charge states that since the filing of the first EEOC charge, the workplace harassment has "worsened," and he reiterates that the employer, through different supervisors, created a hostile work environment. **ECF No. 36-2** at 1. Because defendants do not contend that the claims in the second EEOC charge are time-barred, the Court cannot grant summary judgment on statute of limitations grounds.

Indeed, pursuant to the evidence available, an act contributing to the hostile work environment claim occurred within the filing period. Thus, Villalobos-Santana's claims of hostile work environment, which include non-discrete component acts asserted in the first charge, are not time-barred, and may be presented to the jury for a finding of liability. *See Morgan*, at 117. ("It is precisely because the entire hostile work environment encompasses a single unlawful employment practice that we do not hold, as have some of the Circuits, that the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations.")

### (v)    Co-plaintiff Colón-Rodríguez's claims

Defendants also seek dismissal of co-plaintiff Colón-Rodríguez's retaliation claim related to the administrative investigation that was launched allegedly because of his off-duty side job. **ECF No. 47** at 15.[17] On the other hand, defendants do not suggest that Colón-Rodríguez's allegations regarding retirement are time-barred. *See* **ECF No. 47** at 15. The argument is similar to the one raised against Villalobos-Santana: that this retaliatory conduct was not included in Colón-Rodríguez's second charge. And, according to defendants' interpretation of the law, "the incident with the tow truck is completely unrelated" to the charges asserted in his second EEOC charge.[18] Thus, under their understanding of the applicable test, the timely claims logged in his second EEOC charge cannot pull to actionable grounds the

---

[17] Whether the investigation was really initiated because of Colón-Rodríguez side-gig is disputed.

[18] Defendants' arguments do nothing to distinguish discrete acts from a hostile work environment.

untimely claims of his first charge. For the reasons discussed below, the Court agrees that this claim is time-barred for liability purposes, but under a different ground.

As discussed before, the timely filing test is not whether an untimely act is similar or related to a timely one. The test is whether the employer's actions are discrete discriminatory acts or rather components of a larger hostile work environment. Although not properly developed, plaintiffs seem to grasp the essence of this test. In a single line, they adduce that this claim is not time-barred *inter alia* because the "tow truck incident is part of the hostile work environment." **ECF No. 66** at 7. Plaintiffs are both right and wrong.

As correctly suggested by plaintiffs, if the alleged retaliation was only a "part of the hostile work environment" as opposed to a discrete act, it would not be time-barred. However, they are wrong in assuming that the commencement of an internal investigation by the PRPB (unlawful as it might have been) is not a discrete and independently actionable discriminatory practice. The PRPB's launch of an internal investigation against Colón-Rodríguez is an independent, easily identifiable discrete act that "occurred" in a specific day and did not require further action to rise to the level of a retaliatory practice. *Morgan*, at 110. Therefore, it is a discrete act pursuant to *Morgan* and time-barred as an independent claim for liability according to the parties' understanding of the applicable filing deadlines.

C.    **Defendants' second argument: plaintiffs failed to present a *Prima facie* claim of retaliation**

Defendants next argue that summary judgment is proper because plaintiffs have failed to establish a "*prima facie*" case for most of their claims. **ECF No. 47** at 17.[19]

"Title VII bars employers from retaliating against an... employee because she has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Garayalde-Rijos v. Mun. of Carolina*, 747 F.3d 15, 24 (1st Cir. 2014) (quoting 42 U.S.C. § 2000e–3(a)(internal quotation marks omitted). Importantly, in retaliation claims, plaintiff "must prove… but-for causation." *Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). In other words, "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.*

In the absence of direct evidence, plaintiffs can establish a *prima facie* case of retaliation showing that "(1) [plaintiff] engaged in protected conduct; (2) [plaintiff] suffered an adverse employment action; and (3) that a causal nexus exists between the protected conduct and the adverse action." *López-Hernández v. Terumo Puerto Rico LLC*, 64 F.4th 22, 28 (1st Cir. 2023)(quoting *Garayalde-Rijos*, 747 F.3d at 24)(internal quotation marks omitted). "Once the plaintiff makes out this *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory

---

[19] Although defendants argue that plaintiffs fail at the threshold inquiry (*prima facie*), they include some arguments that address the second step of the *McDonnell, infra,* burden shifting test: the non-discriminatory justification for the adverse action.

explanation for its actions." *Planadeball v. Wyndham Vacation Resorts, Inc.*, 793 F.3d 169, 175 (1st Cir. 2015). If the defendant can establish as much, the burden then returns to the plaintiff "to show that the defendant's explanation is a pretext for unlawful retaliation." *Id*.; *see also Dusel v. Factory Mutual Insurance Company*, 52 F.4th 495, 509 (1st Cir. 2022) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 795 (1973)).

#### (i)      Changes in Villalobos-Santana's work schedule

Defendants argue that "a change in the work schedule" of co-plaintiff Villalobos-Santana "is not an adverse employment action." **ECF No. 47** at 17. As discussed above, however, this claim is time-barred from a liability standpoint.

#### (ii)      Changes in Colón-Rodríguez's work schedule

Defendants argue that PRPB's actions changing Colón-Rodríguez's work shift (from 12:00 p.m. - 8:00 p.m. to 8:00p.m. - 4:00 a.m.) the day after he testified on behalf of co-plaintiff Villalobos-Santana are not sufficient to pass the *prima facie* bar because "it is not uncommon for [] Colón-Rodríguez to work on the 8:00p.m.[-]4:00 a.m. [shift]." **ECF No. 47** at 18, 19. Surprisingly, this is defendants' sole argument on this matter. *See id*. Defendants failed to even argue that Colón-Rodríguez did not "engage[] in protected conduct," or "that a causal nexus exists between the protected conduct and the adverse action." *López-Hernández v. Terumo Puerto Rico LLC*, 64 F.4th at 28.

The defendants admitted that the PRPB changed Colón-Rodríguez's work shift the day after he engaged in protected activity. *See* **ECF No. 47** at 19.  "A schedule change in an

employee's work schedule may make little difference to many workers, but may matter enormously to…" others. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006). That is why, in Title VII claims, "[c]ontext matters." *Id*. Here, the change in the schedule meant that Colón-Rodríguez would now be assigned to work from a dayshift to a nightshift.

The fact that a work schedule change is not "uncommon," on its own, is not sufficient to remove it from real of an adverse employment action. "[P]laintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this [Title VII retaliation] context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 68 (cleaned up).

Even if the Court were to take the analysis a step further, the fact is that Colón-Rodríguez testified during his deposition that the nightshift was substantially more dangerous than the dayshift. **ECF No. 66-3** at 27-29. Moreover, he had been working on the 12:00 p.m. to 8:00 p.m. shift for the previous five years. *Id*., at 21. Thus, a triable issue exists as to the merits of this question. "[T]he judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Defendants also argue that the denial of Colón-Rodríguez's requests to have the weekends off was based on the need the PRPB had for additional officers and Exhibit J's work plan to patrol against drunk drivers. Assuming that plaintiffs made their *prima facie* showing, defendants have certainly "articulate[d] a legitimate, nondiscriminatory reason for the adverse

employment action[.]" *Dusel v. Factory Mutual Insurance Company*, 52 F.4th 495, 509 (1st Cir. 2022). Thus, under *McDonnell*, "the burden returns to the employee to prove that this rationale was pretextual."

Plaintiffs' sole argument in response is that Exhibit J is inadmissible. **ECF No. 66** at 9-10. However, as discussed before, the Court denied plaintiffs' motion to strike Exhibit J. Therefore, plaintiffs have failed to meet their *McDonnell* burden as to the denial of Colón-Rodríguez request to have weekends off as a retaliatory conduct under Title VII. This claim must therefore be summarily dismissed. *McDonnell*, at 795.

In addition, defendants argue that Colón-Rodríguez's claim of retaliation due to the unpaid worked weekend should also be summarily dismissed. In support, defendants proffer Exhibit H, which contains a March 5, 2019, communication from the PRPB's Overtime Division Supervisor "stating that the hours that Plaintiff Colón-Rodríguez worked during the weekend did not qualify for overtime." **ECF No. 47** at 19; **46** at 5; **46-8** translated at **50-3**. Plaintiffs did not oppose this argument, **ECF No. 66**, nor did they rebut the evidence submitted by defendants. **ECF No. 66-1**. Instead, they simply proffer that "Colón[-Rodríguez] understood that this was an error." *Id.*, at 3. Plaintiffs have thus failed to shoulder their burden under *McDonnell* and were not successful in establishing that the employer's justification for not paying for the hours Colón-Rodríguez worked on a weekend were "pretextual."

(iii)    **Villalobos-Santana's transfer**

Defendants argue that Villalobos-Santana's transfer to Barceloneta "cannot be considered an adverse employment action because it was a minor and temporary lateral transfer." **ECF No. 47** at 20. Yet, once again, "context" is important to evaluate work schedule changes in the retaliation framework. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. at 69. Although not as Local Civil Rule 56 requires, plaintiffs do point to Villalobos-Santana's affidavit and deposition testimony in support of their contention that the transfer is in fact adverse. *See* **ECF No. 66** at 10-11.[20] Specifically, they make reference to portions of materials stating that Villalobos-Santana would testify that the transfer forced him to drive 40 minutes more to get to work in Barceloneta, required him to investigate all sorts of criminal complaints (as opposed to just dealing with traffic violations in Arecibo), and made him lose a bonus payment that he only received working in the Arecibo Highway division. *Id*.

Defendants nonetheless argue that such changes are "minor" inconveniences that do not amount to an adverse action under Title VII. **ECF No. 76** at 8-10.  The Court disagrees. "[I]n order to prove that the transfer was materially adverse, [plaintiff] had to show that [defendant] took something of consequence from [him], say, by… reducing her salary, or divesting [him] of significant responsibilities or that it withheld from [him] an accouterment of the employment relationship." *Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 25 (1st Cir. 2002)(quoting *Blakie v. State of Mein*, 75 F.3d 716 (1996)(internal quotation marks omitted)). The Court finds that a triable

---

[20] Despite plaintiffs' inobservance, defendants did not contest such proffer. *See* **ECF No. 76** at 8-10.

issue exists in this regard. Thus, summary judgment dismissing claims of retaliation due to Villalobos-Santana's transfer to Barceloneta is not proper.

### (iv)    Villalobos-Santana's authority

Defendants argue that the "withdrawal" of Villalobos-Santana's authority and power over his subordinates by Martínez-Cruz is not materially adverse because he testified during his deposition that such action occurred before he filed the internal administrative complaint against Martínez-Cruz. **ECF No. 47** at 21. Thus, defendants argue, the purported adverse action occurred before he gave the employer a reason to retaliate against him. However, in response, plaintiffs proffer that during his deposition, Villalobos-Santana clarified that Martínez-Cruz stripped him of authority over subordinates in retaliation for Villalobos-Santana's complaints against his other supervisors, the filing of which predates Villalobos-Santana's internal complaint against Martínez-Cruz and the "withdrawal" of authority. **ECF No. 66** at 12; **66-1** at 4. Defendants did not challenge the proffered facts and deposition testimony. Thus, plaintiffs have proffered potential testimony that could convince a reasonable juror that the "withdrawal" of authority was, in fact, an adverse action in retaliation for Villalobos-Santana's protected activity. Thus, summary judgment is not warranted on this issue either.

### (v)    Administrative investigation against Villalobos-Santana

Defendants argue that the administrative proceedings against Villalobos-Santana, whereby he was notified that the PRPB sought to suspend him of employment and pay for 120 days, is not an adverse action because the charges eventually fell through. **ECF No. 47** at 22-23.

Notably, defendants do not contend that the employer's action was "for non-retaliatory reasons." *Rivera-Colón v. Mills*, 635 F3d 9, 12 (2011). Instead, they posit that the threat of suspension was not materially enough to establish a *prima facie* case.

The Court disagrees with this simplistic proposition. But regardless of this Court's opinion on this issue (*i.e.* whether a threat of suspension amounts to an "adverse action"), the fact remains that it "is well settled in this First [Circuit]" that "a series of minor retaliatory actions may, when considered in the aggregate, satisfy the *McDonnell Douglas prima facie* adverse action." *Alvarado v. Donahoe*, 687 F.3d 453, 459 (1st Cir. 2012). Because plaintiffs' claim of an adverse action is not limited to this "threat of suspension" and include other actions that are unequivocally "materially adverse," defendants' argument is unavailing under the applicable law. And, thus, not deserving of summary judgment.

### (vi)    Cólon-Rodríguez's shooting range incident

Unlike defendants' challenges at the *prima facie* level, they argue that the PRPB's complaint against Cólon-Rodríguez for attending the shooting rage without his immediate supervisor's authorization "was justif[ied] and not retaliatory." **ECF No. 47** at 24. But, as plaintiffs correctly point out, things are not as black and white as defendants suggest. **ECF No. 66** at 12.[21]

Plaintiffs proffered deposition testimony stating that Colón-Rodríguez requested his immediate supervisor, Ramos-Rosario, "to coordinate the necessary training for him to be able

---

[21] Again, defendants did not challenge plaintiffs' proffer of evidence in this regard.

to retire[]" from the PRPB. **ECF No. 6-13**; **66-3** at 61-65. Because Ramos-Rosario did not respond, Colón-Rodríguez "was forced to arrange it through the Police Anti-Discrimination Office." *Id*. Since it was the PRPB's Anti-Discrimination Office who arranged an appointment at the shooting range, Ramos-Rosario was not notified of the appointment. *Id*. Moreover, the materials submitted by plaintiffs in support of their opposing statement of facts show that Ramos-Rosario testified in his deposition that:

> the day of the Shooting Range incident he knew that Plaintiff Colón was exhausting his vacation leave. That the Shooting Range was the one who authorizes police officers to go there. He admitted that the in and out book of the Arecibo Shooting Range for April 9, 2019 had Jimmy Colón's signature and was signed by the director of the shooting range. Lt. Ramos also admitted that if Jimmy Colón's signature was in that book, he had to be authorized to be there. When asked whether his signature was there, he admitted it was not although he went to the Shooting Range that day and continued to claim he was authorized to be there. He also testified that when you went to the Shooting Range, the officers there would check to see if he was authorized to be there and then he would sign the in and out book. Also, Lt. Ramos admitted that no officer of the Shooting Range informed Jimmy Colón that he was not authorized to be there.

**ECF No. 66** at 13, **66-9** at 71-73. The statements and supporting material proffered by plaintiffs went unrebutted and unchallenged by defendants. *See* **ECF No. 76**. Accordingly, plaintiffs have cited material that would be admissible in evidence to establish that defendants' proposed non-retaliatory justification for filing a complaint against Colón-Rodríguez for the use of the shooting range is only a pretext under *McDonnell*. *See* Fed. R. Civ. P. 56. Thus, summary judgment dismissing this claim is denied.

      **(vii)**   **The seizure of Villalobos-Santana's firearm and access to the evidence box**[22]

Defendants seek summary judgment dismissing the amended complaint's allegations supporting his claim of retaliation based on the PRPB's actions when they took Villalobos-Santana's police-issued firearm and removed his access to the evidence box. **ECF No. 47** at 24-26.[23] Villalobos-Santana testified during his deposition that both he and González-Cruz were disarmed after the incident between them in the commercial establishment. **ECF No. 66-2** at 70-75. But he also testified that the PRPB never gave him an explanation as to the reason why his weapon was taken away or the rule or protocol that mandated such action. **ECF No. 66-2**

Defendants claim that the seizure was a precautionary measure according to PRPB regulation. However, they failed to submit any authority stating as much. **ECF No. 66-9** at 86-97; **46**, **47**, **67**. Moreover, Ramos-Rosario (the supervisor that ordered Villalobos-Santana to surrender his firearm) could not identify any regulation stating as much. *Id*.[24] Ramos-Rosario's testimony during his deposition simply stated that he received a written communication from

---

[22] Although the claims related to the seizure of the firearm are time-barred, as discussed above, the Court will run the full *McDonnell* test because (according to defendants) the claims concerning Villalobos-Santana's access to the evidence box are intertwined therewith.

[23] The allegations in the amended complaint on these topics is anything but clear. As a matter of fact, as discussed herein, the deposition testimony submitted by defendants would suggest that some of the allegations of the amended complaint are not only inaccurate but also false.

[24] Plaintiffs provided Ramos-Rosario with copy of the relevant PRPB regulation during the deposition. **ECF No. 66-9** at 89-90. Even though Ramos-Rosario was granted time to examine it, he was not able to identify any applicable regulation during his interrogation by plaintiffs.

his superiors with the order to seize Villalobos-Santana's weapon. Notably, however, defendants have not been able to locate, disclose, produce, or even explain such document. *Id*.

Thus, the materials submitted at this stage fail to demonstrate that defendants would present admissible evidence sustaining that the seizure of Villalobos-Santana's PRPB issued firearm was non-retaliatory and justified. Accordingly, defendants have failed to show they meet *McDonnell*'s burden.

Defendants argue that they denied Villalobos-Santana access to the evidence box because there could be weapons in it and was not a retaliatory act because it followed the alleged order to take away Villalobos-Sanatana's access to weapons. **ECF No. 47** at 25. This argument for summary judgment fails for the reasons discussed above concerning the seizure of his firearm.

### (viii)  Cólon-Rodríguez's retirement

Finally, defendants argue that summary judgment is warranted over Cólon-Rodríguez's claims that the PRPB retaliated against him by making his retirement process more difficult than it should have been. **ECF No. 47** at 27. They cite in support the PRPB's denial of his request to exhaust unused hours of leave and the delay in his enrollment in required ethics courses, both of which were necessary to qualify for retirement. *Id*. Defendants contend that Cólon-Rodríguez's deposition testimony shows that he was aware of the fact that he could take his ethic courses while exhausting his accrued leave days and that the ethic courses were available through the Internet. Defendants argue, there is no *prima facie* case for retaliation in these regards. *Id*.

Plaintiffs counter that although the PRPB's "Ethics Office" offered the ethics courses online, PRPB's policy was that the precinct director should coordinate the courses with the officers to ensure that they did not have any issues with available personnel at all shifts.

Moreover, citing to material that would be admissible in evidence, plaintiffs assert that on August 25, 2018, Colón-Rodríguez informed Ramos-Rosario that he would be exhausting sick leave and vacation time. On September 14, 2018, Colón-Rodríguez again informed Ramos-Rosario that he would be exhausting his sick leave and vacation time. In a memorandum dated August 25, 2018, Colón-Rodríguez asked his supervisor Ramos-Rosario to "send me to the pertinent courses required by the agency for retirement and for your knowledge and pertinent action." **ECF No. 66-9** at 49, **66**-14.

Plaintiffs further posit that, during depositions, Ramos-Rosario stated "[r]egarding the courses, those are set by date in the area and until the dates are available, the person cannot be sent to take the training." **ECF No. 66-9** at 49. Ramos-Rosario added, "if the dates are available, it would be me the one who would give authorization for him to take them." *Id*.  The following exchange also came up during Ramos-Rosario's deposition:

> Q. So, there was something that you had to do, correct?
> A. But I must wait for the headquarters to set it up indicating the courses he must take for his retirement. Once I come into knowledge of that, we verify the dates that are available so he can take the courses that he needs to take.
> Q. So, in other words, there was some authorizations that you needed to issue for him to take this course, correct?
> A. After I was informed by headquarters.
> Q. And then you would authorize it?

A. Correct.

**ECF No. 66-9** at 50-51. All things considered, the evidence proffered by plaintiffs would directly contradict defendants' argument that Colón-Rodríguez was free to take the courses whenever and however he wanted simply because they were available on the Internet. These conflicting theories and purported evidence are the factual "disputes" Fed. R. Civ. P. 56 counsels against.

As to the permission to exhaust leave days, during his deposition, Ramos-Rosario was confronted with a document that he identified as an endorsement allowing Colón-Rodríguez to exhaust his vacation and sick leave. The document included Ramos-Rosario's name, but not his signature. Ramos-Rosario admitted that the signature belonged to another PRPB officer that was covering him during his vacation days. Ramos-Rosario further admitted that without that document, Colón-Rodríguez could not have taken his days of leave. **ECF Nos. 66-9**, **66-16**.[25] According to the document submitted by the parties, Colón-Rodríguez asked his supervisor, Ramos-Rosario, for leave in August 2018. It was not until December 2018 that the requested leave was granted, and it happened when Ramos-Rosario was out of the office on vacation. **ECF No. 66-14**.

In light of the above, summery judgment is not proper on this claim either.

---

[25] *Id*., at 52 ("Q. So, if that document that you have in front of you had not been sent to headquarters, would Agent Colón be able to enjoy his days of vacation and sick leave? A. No. Not necessarily. Q. No? Or not necessarily? A. No.").

**VI.    Conclusion**

In light of all the above, the Court hereby **DENIES** the motion to strike at **ECF No. 78**. The motions for summary judgment at **ECF Nos. 46, 47** are **GRANTED IN PART** and **DENIED IN PART**:

- Villalobos-Santana's claims of retaliation for the discrete acts of the seizure of his firearm and the change of his shifts are time-barred and, thus, unactionable, and hereby dismissed for liability purposes.

- Colón-Rodríguez's claims of retaliation related to the tow truck incident are time-barred and, thus, unactionable, and hereby dismissed for liability purposes.

- Colón-Rodríguez's claims of retaliation due to work on the weekends and the lack of payment for such work are dismissed.

Accordingly, the motion for summary judgment at **ECF No. 47** is **DENIED in PART** as to all other claims asserted.

SO ORDERED.

At San Juan, Puerto Rico, on this 30th day of March, 2024.

S/AIDA M. DELGADO-COLÓN
**United States District Judge**